UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **SHANDE M. PONTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | )  Case No.  08-2159 |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) |
| sued as Michael J. Astrue, | ) |
| | ) |
| **Defendant.** | ) |

# O R D E R

In January 2008, Administrative Law Judge (hereinafter "ALJ") Kenneth Stewart denied Plaintiff Shande Ponton's application for disability insurance benefits (hereinafter "DIB") and supplemental security income (hereinafter "SSI"). The ALJ based his decision on findings that, although Plaintiff suffers from a severe impairment, he is capable of performing other jobs that exist in significant numbers in the national economy; therefore, he is not disabled within the meaning of the Social Security Act.

The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In July 2008, Plaintiff filed a Complaint (#4) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny DIB and SSI. In December 2008, Plaintiff filed a Motion for Summary Judgment (#14). In March 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#17). After reviewing the administrative record and the parties' memoranda, this Court **DENIES** Plaintiff's Motion for Summary Judgment **(#14)**.

# I  Background

## A.  Procedural Background

Plaintiff applied for DIB and SSI in October 2005, alleging disability beginning August 25, 2005.  The Social Security Administration (hereinafter "SSA") denied Plaintiff's applications in February 2006, and again upon reconsideration in August 2006.  Plaintiff filed a Request for Hearing and then testified at the hearing in October 2007.  In January 2008, the ALJ denied Plaintiff's applications for DIB and SSI based on findings that Plaintiff was not disabled within the meaning of the Social Security Act and that he was capable of performing jobs available in significant numbers in the economy.

In May 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  Plaintiff then appealed this decision by filing a complaint with this court pursuant to 42 U.S.C. § 405(g).  Plaintiff seeks an outright reversal.  In the alternative, he asks the Court to remand the case for reconsideration.

## B.  Plaintiff's Background

Plaintiff claims he suffers from chronic back pain and depression.  Both parties described Plaintiff's medical background in detail and the Court need not repeat it here.

## C.  The Hearing Before the ALJ

In October 2007, the ALJ held a hearing at which Plaintiff, Cheryl Hoiseth, a vocational expert (hereinafter "VE"), and Pamala Ponton, Plaintiff's mother, testified.

Plaintiff testified that he is single and has no children.  (R. 34.)  He experiences sharp, shooting pains in his neck and shoulders.  (R. 44.)  Sometimes the pain radiates down his arms, usually on the right side.  (R. 44-45.)  He might have surgery to relieve the pressure on his spine.  (R. 46.)  In the evenings, he has shooting pains in his legs, usually his right leg.  (R. 47.)  He is unable to get eight hours of sleep at night.  (R. 48-49.)  If he washes the dishes for 10 or 15 minutes, he will have to lie down for 20 or 30 minutes to recover.  (R. 49.)  He lies down in his

"comfort zone" for probably 25-30% of the work day. (R. 50.) When he sits at the computer for 20 minutes, his pain is so bad he is "done for the day." (R. 51-52.) He stated that his pain is steadily getting worse. (R. 53.) He is currently taking Tramadol for his pain. (R. 58.) He went to his initial consultation for physical therapy but did not go to another appointment because he moved. (R. 58.) He uses marijuana because it takes his pain away for a little while. (R. 64.) He quit seeing his mental health doctor because he did not want to quit using marijuana. (R. 63.)

He sees his friends every day or every other day. (R. 56.) When with his friends, he will fish or shoot baskets. (R. 56.) During the day, he usually goes for a walk, helps around the house, goes fishing for three or four hours, mows the lawn, or does other yard work. (R. 61.) He can concentrate enough to watch a basketball or football game on television. (R. 62-63.)

Ms. Ponton testified her son is in worse pain than he makes it sound, and that he seems to sleep in twenty-minute intervals. (R. 64-65.) If he helps her carry heavy things, she can hear him suffering later. (R. 66.) He can concentrate only about fifteen minutes. (R. 67.) He is not lazy, and has been working since he was eleven years old. (R. 68.)

The ALJ gave the VE a hypothetical question regarding an individual who is limited to unskilled sedentary work. (R. 68.) The VE testified that the jobs she mentioned were not consistent with the DOT, but she has seen them and believes they do exist. (R. 69.) The VE stated that an individual with such limitations could be a hand packager, inspector, or assembler. (R. 69.) The VE also testified that an individual would have to be productive 90% of the time and could only miss 1.5 days a month. (R. 70.)

When questioned by Plaintiff's counsel, the VE gave DOT listings that were similar to the jobs she had stated the hypothetical individual could perform. (R. 70-71.) The closest DOT listing for inspector was the listing for doll inspector, which is classified as sedentary unskilled work. The closest DOT listing for the assembler job was the listing for production assembler, a light unskilled job. The closest DOT listing for hand packager was hand packager but at the

medium unskilled level. (R. 71.) The VE noted that an employee would not be allowed to lie down at any of these jobs. (R. 72.)

### D. The ALJ's Report and Decision

The SSA defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a)(4). If the claimant is currently employed or was previously employed during the relevant period, she is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The second question is whether the claimant has a severe medical impairment that will last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, the claimant is not disabled, and the inquiry ends. *Id.* The third question is whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the Regulations. If he does, the claimant is considered disabled and the inquiry ends there. If not, between steps three and four, the Commissioner determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. § 404.1545. The fourth question is whether the claimant is able to perform his past relevant work with his current impairment. 20 C.F.R. § 416.920(a)(4)(iv). If he can, then he is not disabled. *Id.* If he cannot perform his past work, the fifth and final question is whether, with his current limitations, he can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 416.920(c)(1).

The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

Here, the ALJ found that Plaintiff has the severe impairment of degenerative disc disease in his cervical and thoracic spine with stenosis at C5-6, but this impairment does not meet or medically equal any of the listed impairments. The ALJ determined that Plaintiff has the RFC to engage in a full range of sedentary work. Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff was able to perform certain jobs that exist in significant numbers in the national economy, therefore, Plaintiff was not disabled as defined by the Social Security Act.

## II. Standard of Review

The ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that "the findings of the commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. New York*, 305 U.S. 197 (1938)). Where conflicting evidence may allow reasonable minds to differ as to whether a claimant is disabled, the responsibility for making that determination rests with the ALJ. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996); *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Therefore, the question for review is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Id.* The Court defers to the ALJ's determinations of credibility, "so long as they find some support in the record." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

## III. Discussion
### A. Credibility

Plaintiff first argues that the ALJ erred when assessing Plaintiff's credibility. Specifically, Plaintiff contends that the ALJ inappropriately applied a higher legal standard than required at the second part of the credibility determination. In support of this argument, Plaintiff relies on *Behymer v. Apfel*, in which the district court stated that "although the ALJ can choose to disbelieve [a claimant's] testimony for the reasons set forth in the regulations, etc., objective verifiability to a reasonable degree of certainty is not a requirement imposed by law."

*Behymer v. Apfel*, 45 F. Supp. 2d 654, 662 (N.D. Ind. 1999).  Plaintiff points out that the language the court used in *Behymer* is similar to the language that the ALJ used in this case.

The Commissioner responds that the ALJ did not rely solely on the fact that Plaintiff's daily activities could not be objectively verified, and thus he did not apply a higher legal standard than required when assessing Plaintiff's credibility.

The Seventh Circuit has outlined an extremely deferential standard of review regarding credibility.  A court can reverse the ALJ's credibility finding only when it is patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  Furthermore, a court should conclude that a credibility determination is patently wrong only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).  The Seventh Circuit court stated that, in reviewing a credibility determination, a court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Id.* at 413 (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2003)).

The Court agrees with Defendant.  Plaintiff is correct that the ALJ used language that is similar to the language used in *Behymer*.  Nevertheless, here, the ALJ explained at length his reasons for discrediting Plaintiff's reports of limiting daily activities.  He considered several factors, including Plaintiff's failure to follow through with treatment, his statements regarding his medication, and his unwillingness to comply with the doctors' recommendations when assessing his credibility.  As a result, considering the standard articulated in *Elder*, the Court cannot conclude that the ALJ's credibility assessment was patently wrong.

### B.  Mischaracterized Evidence

Plaintiff next argues that the ALJ erred by mischaracterizing facts and ignoring relevant evidence.  Specifically, Plaintiff contends that the ALJ failed to consider Dr. Patti Raksin's 2007 opinion, misstated the number of chronic pain appointments Plaintiff attended,

mischarachterized Plaintiff's work history, and improperly relied on a Social Security employee's "observation."

Plaintiff first contends that the ALJ erred by ignoring Dr. Raksin's October 2007 opinion. A review of the decision shows that, although the ALJ did not specifically refer to Dr. Raksin by name, he did refer to her October 2007 opinion in his decision. (R. 16, referring to Exhibit 15F.) Furthermore, Dr. Raksin's October 2007 opinion, similar to Dr. Charles Harvey's earlier opinion, made no mention of work limitations.

Plaintiff next contends that the ALJ erred by stating that Plaintiff had only gone to the pain clinic only once, when the evidence shows that Plaintiff had gone twice. In support of this point, Plaintiff cites *Golembiewski v. Barnhart*, 322 F.3d 912, 916-17 (7th Cir. 2003), in which the Seventh Circuit court found that the ALJ's mischaracterization of the evidence required reversal. There, the ALJ had stated that MRI reports indicated no herniations when, in fact, one MRI report expressly noted probable herniation. This constituted a significant error in *Golembiewski*. In contrast, here the ALJ misstated the evidence by incorrectly stating that Plaintiff had gone to the pain clinic only once. This is a relatively minor factual error, not significant enough to merit remand.

Plaintiff next contends that the ALJ mischaracterized Plaintiff's work history when he said that Plaintiff had worked only sporadically, which led the ALJ to question "whether the complainant's continuing unemployment is actually due to medical impairments" or a lifestyle choice. (R. 18.) Plaintiff contends that while he held multiple jobs over the years, he was generally consistently employed and, furthermore, his work history "suggests plaintiff's diligence towards being employed." (#14-2, p. 13.) Plaintiff also contends that the ALJ failed to mention that Plaintiff worked side jobs while he was unemployed. This Court does not find the ALJ's characterization of Plaintiff's work history to be a reversible error, and notes that the ALJ is not

required to write something regarding every piece of evidence.  *See Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985) (stating that the ALJ is not required to "evaluate in writing every piece of testimony and evidence submitted").

Finally, Plaintiff contends that the ALJ erred by making a negative inference based on a Social Security employee's reported observations.  The ALJ stated, "[i]n contrast to the claimant's presentation at the hearing [(where Plaintiff twisted and turned in his chair, got up several times, and generally indicated discomfort)], the Social Security employee who assisted him with his claim observed that he had no difficulties during their interview."  (R. 15.)  The Social Security employee did, in fact, state that Plaintiff had no difficulty with hearing, reading, breathing concentrating, etc.  (R. 117.)  However, the employee noted that the interview was conducted by a "teleclaim," therefore, Plaintiff is correct in stating that the Social Security employee could not have seen whether Plaintiff was twisting and turning in his chair, as he did at the hearing.  Nevertheless, this statement is just one of several factors that the ALJ mentioned in discussing credibility.  In light of the ALJ's overall explanation of his credibility assessment, this error is not sufficient to establish that the ALJ's credibility assessment was patently wrong.

A critical review of the evidence reveals that, although the ALJ's decision was not perfect, substantial evidence supports his conclusions and any errors are insufficient to merit remand. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different decision."  *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).  Thus, these relatively minor errors do not require remand in light of the overall record.

### C.  Aggregate Effect of Ailments

Finally, Plaintiff argues that the ALJ failed to consider the aggregate effect of Plaintiff's ailments.  Specifically, he contends that the ALJ failed to consider Plaintiff's depression.  In support, Plaintiff refers to *Golembiewski*, in which the Seventh Circuit court stated that if a claimant has one or more severe impairments, the ALJ must "consider the aggregate effect of this

entire constellation of ailments – including those impairments that in isolation are not severe." *Golembiewski*, 322 F.3d at 98.

Plaintiff acknowledges that the ALJ determined that his depression was not a severe impairment and discussed whether any doctors had imposed functional limitations on Plaintiff because of his depression. Plaintiff did not develop this argument further. The Court notes that the ALJ expressly stated that he considered all Plaintiff's symptoms in determining his RFC. In the absence of any further discussion by Plaintiff, the Court finds this argument unpersuasive.

### IV.  Summary

For the reasons set forth above, this Court **DENIES** Plaintiff's Motion for Summary Judgment **(#14)**.

ENTER this 4th day of August, 2009.

                                                       s/ DAVID G. BERNTHAL
                                                       U.S. MAGISTRATE JUDGE